In Re: Appeal of Daniel Laskey et al. Daniel Laskey, Richard Roach and Patrick Connolly, individually and on behalf of all similarly situated taxpayers in the Borough of Blawnox, Appellants.

Argued March 3, 1983, before President Judge CRUMLISH, JR. and Judges WILLIAMS, JR. and BARBIERI, sitting as a panel of three.

*James Victor Voss*, with him, *James R. Mall, Meyer, Unkovic & Scott*, for appellants.

*John F. Cambest, Conway, Meyer & Cambest*, for appellees.

OPINION BY JUDGE BARBIERI, May 23, 1984:

The appellants in this case are three resident taxpayers of the Borough of Blawnox (Borough). They have appealed here, individually and on behalf of all other taxpayers similarly situated, from an order of the Court of Common Pleas of Allegheny County dismissing their appeal from the 1980 Borough audit report. We affirm.

The City of Pittsburgh (City) is the owner of a vacant parcel of land located in the Borough, on Freeport Road, and in 1974, leased this property to the Borough. As permitted by the lease, the Borough subleased the premises to the Blawnox Recreational Authority (Authority), also in 1974. At some time prior to and during August of 1979, landfill was dumped on the property, at the Authority's request, for use in connection with its construction of a "parklet." Some of this landfill, which consisted of rocks, dirt, concrete, and other debris, was deposited on top of a water main

which runs beneath the property at a depth of from eight to sixteen feet. This water main, which is part of the City's water distribution system, is sixty inches in diameter and is approximately one hundred years old.

On September 27, 1979, the City's Department of Lands and Buildings (Department) informed the Borough Building Inspector that it had conducted two inspections of the Freeport Road premises and had noted the dirt and debris. In addition, the Department requested the Building Inspector to order the responsible party to stop any further dumping. The Building Inspector, in response, advised the Department that on August 24, 1979, he had directed the Authority to discontinue work on the "parklet" project due to the unsafe and dangerous conditions created by the landfill.

On November 14, 1979, the Department informed the Borough Mayor that according to its engineers, the weight of the landfill could cause a break in the water main, and directed that all dirt and debris be removed from the property by December 14, 1979. On November 20, 1979, the Borough, in turn, ordered the Authority to remove the landfill at its own expense by November 30, 1979. The Department, at the Authority's request, extended the time for the removal of the debris to January 14, 1980; however, the Authority failed to meet this deadline.

In a letter to the Borough Mayor dated February 14, 1980, the Department wrote: "[w]e have tried to be lenient with your Recreational Authority in granting an extension of time from December 14, 1979 to January 14, 1980 . . . but to no avail." The Borough was ordered to remove all dirt and debris from the property no later than February 18, 1980, and was warned that, in the event the Borough did not comply with this directive, the Department would have the

landfill removed and bring an action against the Borough for the cost of the removal.

At its February 18, 1980 meeting, the Borough Council voted to solicit bids for the removal of the landfill, and published advertisements therefor in *The Herald,* a weekly newspaper of general circulation in the Borough, on March 5, 1980, and on March 12, 1980. Two bids, each in the amount of $7,200 were submitted. At its meeting of March 17, 1980, however, the Council decided to reject both bids because they exceeded the estimated cost of $6,000. In addition, the Council voted at that meeting to declare an emergency ''and have someone remove the dirt immediately before the City of Pittsburgh comes and removes [it].'' William B. Ward, Jr., Council President, was authorized to meet with interested contractors and to award the contract to the lowest bidder.

Pursuant to Mr. Ward's instructions, the Borough Secretary contacted several contractors and informed them of the Council's decision to consider new bids. Three bids were received, and on March 24, 1980, the contract was awarded to Mc Chesney Brothers, Inc. on a low bid of $5,500. On April 7, 1980, following the removal of all dirt and debris from the premises, the Borough Council voted to demand that the Authority pay the $5,500 contract amount. The Authority failed to comply with the request, however, and the Borough Council unanimously approved payment of the contractor's bill from the Borough's treasury at its April 21, 1980 meeting.

In accordance with Section 1041 of the **Borough Code (Code),**[1] the Borough auditors, on February 27, 1981, filed an audit report of the Borough's accounts for 1980. Under Schedule B of the report appeared

---

[1] Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. §46041.

the following: "Capital outlay (from Schedule C) Remove Dirt—Freeport Road $5,500." Pursuant to Section 1044 of the Code,[2] the appellants appealed to the Court of Common Pleas of Allegheny County, claiming that the auditors erroneously failed to impose a surcharge against the members of the Borough Council (appellees) for the expense of the removal contract. Their appeal was dismissed, and the present appeal followed.

At all times relevant to this proceeding, Section 1402(a)[3] of the Code provided in pertinent part:

All contracts or purchases in excess of two thousand five hundred dollars ($2,500) . . . shall not be made except with and from the lowest responsible bidder after due notice in one newspaper of general circulation in the borough, at least three times at intervals of not less than three days when daily newspapers of general circulation are available for such publication, in case of weekly newspapers, such notice once a week for two consecutive weeks.

The appellants do not dispute that the Borough Council initially complied with the competitive bidding requirements set forth by the above-quoted section of the Code, when it advertised for bids for the removal of the landfill on March 5, 1980 and on March 12, 1980. The bids received in response to those advertisements were rejected, however, and it is because the removal contract was subsequently awarded without advertisement for new bids that the appellants contend a surcharge should have been imposed against the appellees, pursuant to Section 1041(c) of the Code.[4] This section gives a borough's auditors the

[2] 53 P.S. §46044.

[3] 53 P.S. §46402(a).

[4] 53 P.S. §46041(c).

initial obligation of determining whether or not a surcharge should be levied against borough officials,[5] and provides in pertinent part that

> [t]he amount of any balance or shortage, or of any expenditure of a kind, or made in a manner, prohibited or not authorized by statute, *which causes a financial loss to the borough*, shall be a surcharge against any officer against whom such balance or shortage shall appear, or who by vote, act, or neglect, has permitted or approved such expenditure, but no elected or appointed official of a borough shall be surcharged for any act, error or omission *in excess of the actual financial loss sustained by the borough, and any surcharge shall take into consideration as its basis the results of such act, error or omission and the results had the procedure been strictly according to law.* (Emphasis added.)

The appellees, on the other hand, argue that the auditors' failure to impose a surcharge against them was proper, because the dumping of the landfill over the water main created an emergency which justified the failure to readvertise for bids.

As the appellees readily concede, the Code does not expressly provide that the competitive bidding requirements of Section 1402(a) may be disregarded in cases of emergency. We believe, however, that where *immediate action* is necessary to correct a dangerous condition, Borough officials must be permitted to bypass those requirements and enter into contracts without the imposition of a surcharge against them.[6] To

---

[5] *Laskey v. Bruno*, 64 Pa. Commonwealth Ct. 509, 440 A.2d 1281 (1982).

[6] We note that Section 1802(b) of The County Code, Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. §1802(b), sets forth advertising requirements for contracts and purchases over a stated

find that in emergency situations, where time is of the essence, these officials must either advertise for bids or be subject to a surcharge would open the door to disaster and catastrophe. Clearly, the legislature did not intend such a result in enacting Section 1402(a).

Here, because the weight of the landfill could have caused the water main to rupture, a dangerous condition patently existed. But the water main did not rupture, and there was no indication that it would imminently do so: an official from the Department testified before the trial court that if the water main had been damaged in any way, it would have been leaking. The landfill created the *potential* for an emergency, but its presence over the water main did not require such immediate action as would have relieved the Borough Council of its duty to advertise for new bids. ·

Furthermore, although the Borough, in August of 1979 was clearly aware of the dumping of the dirt and debris, the Borough Council did not decide to declare an emergency until its meeting of March 17, 1980. In the meantime, the Borough Council *did* initially comply with the advertising requirements of the Code, but rejected the bids it received *because they exceeded the estimated cost of removal.* These actions indicate that the appellees themselves did not believe an emergency actually existed, but instead feared a suit by the City for the cost of removing the landfill.

Having concluded that no emergency existed in the present case, however, we still believe that the assessment of a surcharge here would be improper. As we have noted above, Section 1041(c) only authorizes surcharges for "any expenditure of a kind, where made in a manner, prohibited or not authorized by statute,

---

amount in language which is substantially identical to that found in Section 1402(a) of The Borough Code, but provides that such requirements need not be followed in cases of emergency.

which causes a financial loss to the borough[,]'' and further provides that ''any surcharge shall take into consideration as its basis the results of such act, error or omission and the result had the procedure been strictly according to law.'' Here, the proper procedure produced bid proposals in the amount of $7,200, while the ultimate cost of removing the dirt was $5,500. Accordingly, since there was not any ''actual financial loss by the borough'' here, the assessment of a surcharge would be improper. We shall accordingly affirm.[7]

### Order

And Now, this 23rd day of May, 1984, the order of the Court of Common Pleas of Allegheny County at No. 12 of 1981, dated May 17, 1982; is hereby affirmed.

Judge Williams dissents.

---

[7] This case was reassigned to the author of this opinion on February 10, 1984.